UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| United States of America,<br>　　　　　Plaintiff,<br><br>-and-<br><br>Benjamin T. Mann,<br>　　　　　Defendant. | **DEFENDANT'S SENTENCING<br>MEMORANDUM AND<br>MOTION FOR VARIANCE**<br><br>Case No. 21CR31JDP |

Comes now Defendant, Benjamin T. Mann, by counsel, Jerome J. Babiak, and submits the following sentencing memorandum for this Court's consideration prior to the imposition of sentence herein. Defendant confirms that he has received the Presentence Investigation Report ("PSR") prepared by U.S. Probation Officer Jessica E. Sheets on or about October 25, 2021 and understands that this Court will consider said report during sentencing. However, because the PSR considers an *advisory* guideline sentencing range, Defendant submits this sentencing memorandum and motion for variance to assist the Court in determining the most appropriate sentence herein.

## BACKGROUND

Benjamin Mann was named in a six-count Indictment in the above-titled case wherein Counts one through five charged him with distribution of child pornography in violation of Title 18 U.S.C. §2252(a)(2), while Count six charged him with possession of child pornography in violation of Title 18 U.S.C. §2252(a)(4)(B) and conspiracy to possess, distribute, or produce child pornography in violation of Title 18 U.S.C. §2252(b)(2). On September 9, 2021, Mr. Mann appeared at his plea hearing, whereby he entered a plea of guilty to Count one. Counts two through six were to be dismissed at sentencing.

The PSR was completed and filed on October 25, 2021. The Guideline calculation is as follows:

- A base offense level of 22;
- A two-level enhancement for material involving a minor child under the age of 12, pursuant to §2G2.2(b)(2);
- A two-level enhancement because the offense involved distribution of child pornography, pursuant to §2G2.2(b)(3)(F);
- A two-level enhancement for use of a computer, pursuant to 2G2.2(b)(6); and

- A five-level enhancement for possession of more than 600 images, pursuant to §2G2.2(b)(7)(D).[1]

The PSR recommends a three-level reduction for acceptance of responsibility, resulting in a total offense level of 30.[2] Mr. Mann has no criminal convictions and is in criminal history category I.[3] The *advisory* Guideline range as calculated in the PSR is 97 to 121 months.[4] As indicated in the PSR, there is a statutory minimum term of imprisonment of five years and a maximum term of 20 years, along with a term of supervised release no less than five years, or life.[5]

## ANALYSIS

The Court follows the sentencing framework as described in *Gall v. United States*. The Court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range, which provide a "starting point and the initial benchmark".[6] However, the court must make an individualized assessment based on the sentencing factors in U.S.C. §3553(a) and impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing.[7] U.S.C. §33553(a) provides an analytical framework to the Court for determining whether or not a variance from the Guidelines range is appropriate.

### 1.  Mr. Mann's Guidelines Sentencing Range

In many cases, the Guidelines will approximate a sentencing range that would achieve the objectives set forth in §3553(a).[8] These ranges are typically a product of the Sentencing Commission's careful study and "based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions."[9] Where a Guideline does not reflect the careful study of the commission, it is likely not "a reliable indicator of the Sentencing Commission's perspective on a fair sentence."[10] When that occurs, the Court may vary up or down from the Guidelines recommendation on a case-by-case basis after making a determination that the Guidelines would create an excessive sentence.[11]

---

[1] Doc. #22, Presentence Investigation Report at p. 14-15, ¶ 35-45.
[2] *Id.* at p. 15, ¶ 46-48.
[3] *Id.* at p. 16, ¶ 53.
[4] *Id.* at p. 21, ¶ 80.
[5] 18 U.S.C. §§ 2252 (a)(2) and 2252 (b)(1).
[6] *Gall v. United States,* 552 U.S. 38, 49 (2007).
[7] *Id.* at 49-50; *United States v. Beiermann,* 599 F.Supp.2d 1087, 1091 (N.D. Iowa 2009).
[8] *Kimbrough v. United States*, 552 U.S. 85, 109 (2007).
[9] *Gall*, 552 U.S. at 46.
[10] *United States v. Shipley*, 560 F.Supp. 2d 739, 744 (S.D. Iowa 2008).
[11] *Spears v. United States*, 555 U.S. 261, 265 (2009).

Numerous courts have explained that child pornography Guidelines are not the result of the Commission's expertise or based on careful study and empirical data.[12] USSC §2G2.2 consists of several outdated enhancements that, in practicality, apply to every case.[13] §2G2.2 is the result of 2 decades worth of Congressional directives that have continued to raise penalties and pile on enhancements.[14] As a result, the Guideline calculation leads to sentencing recommendations near the mandatory maximum required by statute, even for first time offenders.[15] The Sentencing Commission, acknowledging this dilemma, issued a comprehensive report surrounding USSC §262.2 in 2012.[16] The Commission determined that "the current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements related to their collecting behavior.[17]

These enhancements were implemented in an earlier technological era where offenders received and distributed child pornography through the postal system.[18] As technology has changed, so has the profile of a typical offender, making the accessibility and volume of child pornography easier to get to than ever before, even for a first-time offender.[19] This is something that is not taken into consideration by USSC §2G2.2. Because of these outdated and archaic enhancements, a first-time offender guideline recommendation can approach, and even exceed the statutory maximum "based solely on sentencing enhancements that are all but inherent to the crime of conviction."[20]

None of the above is meant or intended to negate the seriousness of the offense Mr. Mann had plead to and is being sentenced for. Crimes involving children, especially those of child pornography, are serious and cannot be overlooked. However, at sentencing the Court must differentiate between offenders of these crimes based on the crime itself and the nature of the defendant. These are things that are not accomplished by §2G2.2. Based on the PSR completed in Mr. Mann's case, the Guidelines calculation shows a range of 97-121 of imprisonment. This range takes little to nothing into consideration regarding the offense itself or into Mr. Mann as a person. This is "fundamentally incompatible with §3553(a)" and "violates the principle, reinforced in *Gall*, that courts must guard against unwarranted similarities among sentences for defendants who have been found guilty of dissimilar conduct."[21]

---

[12] *United States v. Dorvee*, 616 F.3d 174, 184-186 (2d Cir. 2010).
[13] *Id*. at 186
[14] *United States v. Henderson*, 649 F.3d 955, 960-63 (9th Circ. 2011); *Dorvee*, 616 F.3d at 184-86.
[15] *Dorvee*, 616 F.3d at 186.
[16] United States Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* (Dec. 2012), available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf.
[17] *Id*. at 321.
[18] *Id*. at 313
[19] *Id*. at 312-313.
[20] *Dorvee*, 616 F.3d at 186.
[21] *Id*. at 187 (citing *Gall*, 552 U.S. at 55).

Because of these inadequacies, several courts have rejected §2G2.2.[22] Others have still used the Guidelines but give them less weight in determining a sentence.[23] Even where courts have rejected the Guidelines, they have still been used as a basic framework and starting point, with the court rejecting some enhancements while giving others more weight in determining a sentence.[24] This allows the court to formulate a reasoned alternative, which fulfills the responsibility that accompanies the rejection of the Guidelines.[25]

Mr. Mann asks that the Court utilize the Guidelines as a basic framework as suggested, while rejecting the enhancement for use of a computer pursuant to §2G2.2(b)(6) and reducing the enhancement for number of images pursuant to §2G2.2(b)(7)(D) from 5 points to 4.

The enhancement for use of a computer applies in almost every case and does not serve any legitimate or reasonable purpose. Computer use is so widespread that the enhancement "is a little like penalizing speeding, but then adding an extra penalty if a car is involved."[26] For those reasons, the defendant believes this enhancement should be removed.

As for the enhancement for number of images, Mann asks that the court look at other factors than just the quantity of images, such as the collection behaviors of the defendant, the investments made into the collection, and the realities of technology to obtain images. As the Commission has indicated, 600 images are simply too few to trigger the maximum enhancement when the typical offender has hundreds or thousands of images.[27] There is no denying the number of images that Mann distributed, that being over 4,000. However, there is nothing to show how many of the images and videos he possessed were duplicates. There is no evidence to show that Mann went to extreme levels to obtain these images. Mann received the images from others and then saved them. Taking these additional facts into consideration, Mann feels that a 4-point enhancement is appropriate.

If the Court were to adopt the proposed changes to the Guidelines range as suggested by Mann and considered by the Commission, Mann would have a baseline score of 27. This would recommend an imprisonment range of 70-87 months.

### 2.   18 U.S.C. §3553(a) Factors

18 U.S.C. §3553(a) sets forth seven factors which the court must consider prior to imposing a sentence:

---

[22] *See United States v. Beiermann*, F.Supp. 2d 1087 (N.D. Iowa 2009).

[23] *See United States v. Cruikshank*, 667 F.Supp. 2d 697, 702 (S.D.W. Va. 2009).

[24] *Beiermann*, F.Supp 2d at 1107.

[25] *Id.*; *see also United States v. Aguilar-Huerta*, 576 F.3d 365, 367 (7th Cir. 2009).

[26] *United States v. Kelly*, 868 F.Supp. 2d 1202, 1209 (D.N.M. 2021).

[27] United States Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* at 61.

1) The nature and circumstances of the offense and the history and characteristics of the Defendant;

2) The need for the sentence imposed to reflect the four primary purposes of sentencing, i.e. retribution, deterrence, incapacitation, and rehabilitation;

3) The kinds of sentences available (e.g. whether probation is prohibited or whether a mandatory minimum term of imprisonment is required by statute);

4) The sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines;

5) Any relevant policy statements promulgated by the Commission;

6) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.[28]

A sentence within the guidelines range is not presumed to be reasonable; rather, the Court makes an individualized assessment based on the facts of each case.[29]

Distribution of child pornography is indeed a serious offense, as evinced by the statutory requirement of a five-year mandatory minimum period of imprisonment. The children involved in these types of cases suffer significantly, as is shown by the victim impact statements filed by the government.[30] When evaluating the totality of the circumstances in the present case, Mann's conduct could be described on "the low end of the continuum of criminal conduct – from possession to distribution to production to predatory abuse – the exploits children."[31] There are also varying levels of culpability in defendants who distribute child pornography.[32] Here, Mann did not distribute the images for any sort of financial gain. He did not distribute in an effort to entice a child into performing a sexual act. Instead, he played a small role in a larger group of individuals who engaged in similar conduct.

Mann was found to be part of a group on Kik known as "Trading Fun."[33] Mann was found to have posted images, videos, and URL links of child pornography from March and June 2020.[34] On March 2, 2021, a search warrant was executed at Mann's home. Mann was arrested and questioned by law enforcement. At that time, he admitted his wrongdoing and cooperated with the investigation. [35] Mann did not create any of the images himself. He did not take part in

---

[28] 18 U.S.C. §3553(a).

[30] Document #23, Victim Impact Statements.
[31] *United States v. Howard*, 2010 WL 749782 at 8 (D. Neb. 2010).
[32] *Id.*
[33] Document #22, PSR at p. 5, ¶ 9-10.
[34] *Id.*
[35] *Id.* at p. 9-10.

this group for any sort of financial gain. Mann was a part of this group to satisfy a deeply routed addiction.

Mann is a 40-year-old man who has lived in Wisconsin Rapids, Wisconsin his whole life. Following in his father's footsteps, Mann pursued a career in electrical work, where he worked in varying positions until his most recent employment as a Union Member in IBEW Local 388 in Stevens Point, Wisconsin. He began dating Andrea Mann in 2008. married Andrea Mann on June 23, 2012 and is still married to her today. He has two biological daughters, as well as one stepdaughter. Throughout this process, Mann has had continuous support from him wife, family, and other members of the community, most notably through his church. This support is shown in the letters of support provided on behalf of Mann and attached hereto as Exhibit A.

Mann prides himself on being a man of faith. He has and continues to pledge himself to his faith, as shown in a letter provided from Josh Steinmetz, his Pastor at Faith Baptist Church. Through his faith and religious community, Mann was able to acknowledge and seek out treatment for his underlying addiction to child pornography. From April 9 to April 11, 2021, Mann completed an intensive treatment program in San Antonio, Texas through "Be Broken Ministries."[36] In that program, Mann was able to learn valuable lessons and tools to help turn away from his addiction to child pornography. He was also provided follow-up resources to contact for continued help and guidance with his addiction. The program recommended he seek out a prescription for an antidepressant.

Aside from the instant cases and additional State charges stemming from this case, Mann has no prior criminal history. He has never been involved with the criminal justice system and has only been issued a traffic citation for operating a motor vehicle without insurance.[37]

Going straight to the heart of the present case, Mann acknowledges his wrongdoings. He has taken responsibility for his actions, as shown in the 3-point reduction in the PSR.[38] Mann also knows he has an addiction to child pornography, as evinced by him seeking out treatment. Mann's lack of a criminal history, compliance with law enforcement and his overall remorsefulness for what he has done. Mann is ashamed for what he has done and wants to better himself for his family and his community.

The Court is also to look at the need for the sentence to achieve the general purposes of sentencing, including:

---

[36] *Id.* at p. 18, ¶ 66.
[37] *Id.* at p. 16, ¶ 54.
[38] *Id.* at p. 15, ¶ 46-47.

(A)to reflect the seriousness of the offense, to promote respect for the law, and to
provide just punishment for the offense;
(B)to afford adequate deterrence to criminal conduct;
(C)to protect the public from further crimes of the defendant; and
(D)to provide the defendant with needed educational or vocational training,
medical care, or other correctional treatment in the most effective manner.[39]

As indicated above, the seriousness of this offense cannot be ignored. However, the
statute takes the seriousness of the offense and just punishment into consideration when
requiring a five-year mandatory minimum period of imprisonment. Also, by pleading and being
convicted of this crime, Mann will now be required to register as a sex offender. This is a
significant punishment that will have prolonged consequences throughout his life. "To be
adjudicated guilty necessarily results in denomination as a sex offender; automatically provided
is a lifetime of continuous punishment…Adding unnecessary, unduly long, periods of
incarceration are inappropriate and should be avoided."[40]

This in and of itself provides significant deterrence for Mann to commit any further
criminal acts. This also provides significant protection to the public in that Mann will be required
to provide notice of his registry requirement for many things he may do in the future. With
treatment and a tightly structured supervised release regimen, which likely will include mental
health treatment to address his addiction, Mann has a low risk of recidivism. Combining these
factors with the fact that Mann is a 40-year-old man who, not only has no prior criminal history,
but also has shown significant remorse for his actions, a five-year period of imprisonment
appears more than sufficient.

As detailed above, the Sentencing Commission has evaluated §2G2.2 and found flaws in
several of the enhancements that are all but guaranteed in cases involving child pornography.[41]
Due to these flaws, many offenders, regardless of the nature of the offense or personal
characteristics of the person themselves, are faced with extensive periods of imprisonment.
Following the Guidelines range as calculated in the PSR, it is all too possible that an individual
like Mann, who is 40 years old with no prior criminal history, can end up with a range similar to
an individual with an extensive criminal history. The Guidelines blur the line of differentiating
offenders based on the crime they are facing and the actual person themselves. While all child
pornography cases are indeed serious and warrant significant punishments, not all offenders are
created equal. Due to Mann's lack of a criminal record and his cooperation and remorse, he
should be punished differently than one with an extensive criminal history. This cannot be
achieved by using the Guidelines as §2G2.2 intended.

---

[39] 18 U.S.C. §3553(a)(2)(A-D).
[40] *United States v. R.V.*, 157 F.Supp. 3d 207, 210 (E.D.N.Y. 2016).
[41] United States Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses*

## CONCLUSION

When considering the Sentencing Commission's comments on §2G2.2 in cases involving child pornography, the factors laid out in §3553(a), and Mr. Mann's cooperation and acceptance of responsibility, it is clearly within the Court's discretion and authority to find a downward variance from the sentencing guidelines range and recommended sentence. A downward variance in this instance is reasonable, fair and appropriate based upon the nature and circumstances of the present offense, coupled with Mr. Mann's lack of a criminal history and personal characteristics. As suggested by Mann, a downward variance of at least 3 points is justified in this instance based on the Commission's handling of child pornography cases and enhancements following the improvement in technology.

The Court is to impose "a sentence sufficient, but not greater than necessary," to comply with the factors in §3553(a).[42] The factors give the Court latitude to vary downward from the imprisonment recommendation by the guidelines. This is especially true where the recommended guideline sentence is excessive and fails to consider the factors in §3553(a), as is the recommendation in the present case.

Having accepted responsibility for his wrongs and taken accountability for his actions by entering a guilty plea to the count as alleged, Mann is respectfully requesting the Court to exercise its' discretion and latitude in this case by imposing a term of imprisonment of five years, followed by a five-year period of supervision. Combining the downward variance of 3 points, along with the factors set forth in §3553(a), Mann believes that a five-year period of imprisonment is sufficient. A sentence of that magnitude will impress upon Mann the seriousness of the offense and need for punishment, while also taking into consideration his acceptance of responsibility, remorsefulness of his actions, and lack of a criminal history. With treatment and supervision, Mann provides minimal risk to the public and community at large. This sentence will also serve as a significant deterrent to a 40-year-old man who has never been incarcerated before. Furthermore, the sentence will promote to the victims of this offense and the public at large that cases involving child pornography are serious and not to be tolerated.

WHEREFORE, Defendant, Benjamin Mann respectfully requests the Court impose a period of imprisonment of five years, along with a period of supervision of five years.

---

[42] *Gall*, 552 U.S. 38 (2007).

HEREBY CERTIFY: That a true and exact copy of this document was electronically filed in the Court's system and will be sent through that means to the attorneys of record.

Respectfully submitted this 24ᵗʰ day of November, 2021.

NASH LAW GROUP
ATTORNEYS AT LAW, S.C.

Jerome J. Babiak (1117237)
Attorneys for Benjamin T. Mann
170 Third Street North
P.O. Box 997
Wisconsin Rapids WI 54495-0997
Telephone: (715) 423-8200
Email: jbabiak@nashlawgroup.com

To whom it may concern:

I am writing to give a character reference for Ben Mann. I have known Ben for many years, and I have been his pastor at Faith Baptist Church in Wisconsin Rapids for the past 7 years.

I want to begin by acknowledging the seriousness of Ben's crime. There is no excuse for his participation in the horrible scene of child pornography, and I commend our justice system for taking his crime very seriously.

Please let me also affirm the sincerity of Ben's repentance. I have met with Ben for pastoral counseling since his initial arrest in March of 2021. We met a total of 12 times during the period of March through August with many informal calls and conversations as well. Our goals together focused on two major steps: 1) restart from a place of sincere turn-around (the term in the Bible is *repentance*, 2 Corinthians 7:10-11), and 2) begin the process of real and lasting change (the term from the Bible is *transformation*, 2 Corinthians 3:18).

Along with our time together I recommended a 3-day counseling intensive aimed at overcoming unwanted sexual addiction (Gateway to Freedom by Be Broken Ministries in San Antonio, TX). Ben was eager to get this kind of help and invested the money and time to go. He came back with an excitement and diligence about his process of change, and he followed up with what he learned there and the resources they gave him.

Because of what I see in Ben, I trust that his determination to change is sincere and that he has the support and resources he needs to experience real and lifelong freedom from his previous sexual addiction that he pursued in the form of child pornography.

I also see in Ben a willingness to comply with restrictions that have come as a result of his behavior. As part of our church response to Ben's arrest, we shared with Ben a list of expectations we have for him in interacting with our ministries. Among other things, Ben will be prohibited from volunteering with children or youth, he will keep himself accountable to a group of men in the church for ongoing freedom from sexual addiction, and any church involvement will require the presence of an approved chaperone. Ben agreed to comply with these protective measures and understood their importance for the church and for himself.

Thank you for considering my character reference for Ben.

Sincerely,

Josh Steinmetz

Pastor, Faith Baptist Church
jsteinmetz@faithrapids.org
Cell: (267) 421-1960
Office: (715) 424-1141



EXHIBIT

A

To Whom it May Concern,

I am a deacon in our church, I watched Ben grow up and marry annie also take the responsibility of a father for He and annie's children. He worked as an electrician. Many long hours and building a home for them. I helped him to pull wires in the home, He was very good to work With. I know his parents they are hard working people. Ben is a hard worker loves his family and wants to do right.

I visited him weekly and talked with him. He is sorry about this and Ive seen him working to make changes in His life.

Sincerely,
Carl W. Vehrs (Bill)

October 3, 2021

To Whom It May Concern,

I am writing to you with regards to Benjamin Mann and what I know about his character.

I have known Ben all his life, but because of him living in Wisconsin and myself in Texas, we have not had the opportunity to get together very often.

He spent some time with my husband and me when he came to San Antonio, Texas to attend a weekend retreat for men struggling with porn addiction.  He stayed with us overnight before the retreat started and then after before flying back to Wisconsin.  We were both encouraged and impressed with how important he felt it was to reach out for help in dealing with his addiction.  He realizes the seriousness of his problem and that he needs direction and help in dealing with it.

While he was in our home he was very considered and helpful.  Being an electrician, he was happy to help us put up two ceiling fans.  He is a very conscientious worker and strives to do his best.  Which is very good!

His mom came with him to San Antonio, and she stayed with us as well.  It was heartwarming to see the patience, respect, concern and love he bestowed toward her.

While here he also kept close contact with his wife who was back in Wisconsin.  He shared with her everything he had learned.  They seem to have a loving marriage with open communication which is missing in so many marriages today.  He respects his wife and appreciates her counsel.

I must say he was a delight to have in our home and we have great respect for him.  He realizes the terrible wrong he has done and seems truly sorry for all those he has hurt.  He realizes there are consequences he must live with because of his actions and mistakes, but he also is seeking out help to deal with his addiction.

My husband has a son who has struggled with drug addiction for many years.  He sent him to Teen Challenge in Minnesota.  Through the help he received there, and the counsel and prayers of many others, today he is doing well.  He is living on his own and being accountable for his actions.  So, we understand some about the hold addiction can have on a person.

It is good to see Ben take steps toward rehabilitation.  I know he will continue to face struggles, but with the strong support team he has gathered around him he now knows who to turn to for help.

Sincerely,

Betty Hoffman

1020 North 70th Street
Lincoln, NE 68502
October 1, 2021

To whom it may concern:

When it came to my knowledge the charges against Ben Mann, I was shocked and heart broken. Ben has been a loving husband and father. He has been a hard worker, dedicated to providing for his family, yet taking time with them for activities the whole family can enjoy together.

I know Ben as a man considerate of the welfare of others, always ready to give them a hand when it is needed.

My husband and I visited him during his recent house arrest. He expressed his sorrow at having been lured into pornography and his desire to be freed from it. We sensed a true repentance and not just a sorrow for being caught. He was grateful to those reaching out to help him turn his mind back to things that are pure and upright.

A lengthy sentence would be detrimental to the restauration of the family. My husband and I will be very grateful if you would consider these things in passing a sentence on Ben.

Sincerely,

*Priscilla Goossen*

Priscilla Goossen

To Whom it may Concern,

   Ben is a "people pleaser". He enjoys doing things that will please others. It seems to give him joy to be able to put a smile on someone's face. He is also a helper, giving someone a hand when they need help. Sometimes he kindly gives instructions on a better way to get the job done.
   Family is important to Ben and he truly loves his family. I love to see him interact with them. He loves to have fun with them by playing games, taking them swimming, watching movies together, and attending church and ball games together. Ben is tender-hearted and gentle-speaking the truth in a loving manner, and disciplining in a gentle way.
   He is an avid reader and learns a lot from books. It is interesting to hear about the things he learns from reading.
   It is clear that he is very sorry for what he has done. Being separated from his wife and children is the hardest thing for him. He loves them so much!
                              Sincerely, Phyllis Mann

Andrea Mann
4989 Fisher Rd
Wisconsin Rapids, WI 54495


October 15, 2021


Dear Honorable Judge Peterson,

I am writing this letter on behalf of Benjamin (Ben) Mann, regarding his upcoming sentencing.

Ben Mann is my husband and the father of my children. I have known him for more then 20 years. I have never met anyone who is as kind, hardworking, and as funny as he is.

I understand what he has done, and I am not defending his actions in this matter in anyway.
He knows the gravity of his actions and is living with that every day. After his arrest in March 2021, he wanted to seek help. He reached out to our Pastor and started meeting with him. Pastor also found a retreat in San Antonio Texas that was a weekend long intensive for men struggling with a sexual addiction. Ben was very eager to go, and it may be one of the best things he has ever done! He came away from the retreat with a new understanding of who he was and who he can be. He has also done some court mandated therapy which has been remarkable as well. Because of the court mandated therapy, he was advised to see a doctor about depression and anxiety. He was prescribed medication for depression. He has told me on multiple occasions that he wishes he would have gotten the help years ago when he and his parents were told by his teachers that he had ADHD. Unfortunately, he was raised in a generation with a stigma toward mental illness such as depression, anxiety, and ADHD.

Ben is the kindest and selfless man I know! He worked many hours, sometimes as many as 70 hours a week as an electrician to provide for our family and make our dream of building our home on the farmstead where I grew up a reality. When he wasn't working, he was doing things outside such as teaching our kids how to work in the garden or how to build things. He is a believer in being creative and working hard to get the things you want out of life.

I would like you to know that I understand that life when he gets out will be very different. Ben and I have talked about how my number one job is to keep my children safe, and I intend to do that. My husband is a great father, and my kids are lucky to have him as their dad and stepdad.

I know that Ben understands that what he did is wrong and is truly sorry for his actions. We have had many conversations about how we can make good come from this. We have many ideas once we know what he will/will not be allowed to do. He wants to help people, so they don't end up where he is now. He has also been telling me that he hears that federal prison has counseling, and he would really like to continue that as we both feel it has helped him understand himself better. He is constantly apologizing for the hardship his actions have brought on our family. Not only financially but even worse the anxiety from harassment of others and the fact that he can not have any communication with our children. I don't think any amount of prison time will be as hard on him as being unable to talk to our children for the last 8 months has been. I am hoping you see it fit to give the minimum sentence because I can see a change in him already and a longer prison sentence will be even more detrimental to my children. They love and need their father.


Sincerely,

Andrea Mann
Andrea Mann

Kevin and Beatha Kliewer
2511 Chase Street
Wisconsin Rapids, WI  54495


October 19, 2021


Re: Benjamin (Ben) Mann


To The Honorable Judge:

      We are writing this letter on behalf of Benjamin (Ben) Mann.  We have known Ben for the last 5 years and have worked together on a variety of different projects and through these interactions have become good friends.   We were truly shocked to learn of the nature of the offense from someone who was (and still is) so close to us.  While we understand the seriousness of the matter at hand, we hope the court will show some leniency in sentencing.

      While we can never fully know a person's heart, we feel that we have seen repentance from Ben since his arrest in March of 2021, as well as a desire to change.  We do not believe that the path of pornography was a chosen path for Ben, but rather a slippery slope of temptations that started when he was very young and over a long period of time, led him further and further down a hole of from which, even when he tried, he was unable to escape.  Being arrested has been one of the best things that could have happened in this situation, as it caused Ben to acknowledge his own shortcomings and to seek the help he needed.  He, along with his wife's help, took it upon themselves to find a treatment program and have Ben participate in it at their own cost.  Ben even brought back what he had learned about himself and his addiction through the treatment program and shared it with others in our group of friends so that they too could understand how to prevent this from happening to them and even how to help their children from making similar mistakes down the road.

      It is truly unfortunate that these crimes were committed and we in no way condone them.  We however find it admirable that Ben is owning up to his actions and taking responsibility for them, even though it means having to be separated from his wife and children, who we know miss him very much. We know that nothing can change the past but we hope you will take this letter into consideration when you sentence Ben.  Despite all that has occurred we still believe that Ben is an honorable person and his actions in the last 7 months have shown us a changed human being.


Sincerely,

Kevin and Beatha Kliewer

Marie Marschke
P.O. Box 19010
Golden, CO 80402

October 14, 2021

To Whom it May Concern;

I am writing in reference to Ben Mann, who is appearing in court.

I understand the seriousness of this matter. I also care for Ben deeply, as he is my little brother. His future and the future of his family is important to me.

Ben was raised in a "good Bible-believing, Christian home." He has always been reserved, gentle, humble and kind. He struggled with school and had few friends. He was more of a follower than a leader and lacked self-confidence. In the midst of his struggles, because of his shy attitude, he often remained under the radar. As soon as he was old enough he worked for Dad, helping with his electrical business. Ben was always willing to fulfill his obligation and duty as a provider of his family and tried to be a good father. Most recently his personal struggles have brought to light medical and emotional issues that he is now addressing through counseling and/or medication. He has made mistakes, is extremely remorseful, and has been taking steps of reparations and reform.

My request is that you consider Ben's personal character traits along with the help and support that he is now receiving, when deciding the terms of his punishment.

Sincerely,

Marie Marschke